322

### Hudson County Circuit Court.

GEORGE L. BRAINARD, PLAINTIFF, v. NEW YORK, ON-
TARIO AND WESTERN RAILWAY COMPANY, A COR-
PORATION, DEFENDANT.

For the rule, *William H. Carey.*

*Contra, Charles W. Broadhurst.*

CLEARY, J. The defendant has entered a special appear-
ance and obtained a rule to show cause why the service of the
summons and complaint should not be set aside, and has as-
signed the following reasons:

1. That the court has no jurisdiction on the face of the
complaint.

2. That Harris was not such an agent as could be served.

3. That the service did not constitute due process of law
under the fourteenth amendment.

4. That the service was illegal because it imposed an undue
burden on interstate.

The plaintiff is a resident of the State of New York. The
defendant is a corporation of the State of New York and
has never taken the proceedings prescribed by our Corpora-
tion act to authorize it, as a foreign corporation, to transact
business in the State of New Jersey.

The plaintiff brought this action to recover damages, sustained by him on January 23d, 1927, due to an automobile which he was operating being struck by one of the defendant's trains at a crossing of the defendant, which said crossing is located in the State of New York.

The summons and complaint were served upon Leroy E. Harris, who was employed by the defendant as a "milk collector," by serving him personally at the office where he works in Weehawken in this state. Mr. Harris sent the papers to the general attorney of the defendant in New York City. It is this service which the defendant is attempting to set aside, upon the grounds heretofore stated.

The question to be decided is not whether in any case an action will lie against a foreign corporation for injuries sustained in another state, of which both parties are residents, but whether under the facts in this particular case the court has

1. Acquired jurisdiction of the person of the defendant.

2. Whether requiring the defendant to answer in this court would impose an illegal burden upon interstate commerce, which is the only business carried on by the defendant in this state.

The testimony taken upon the rule discloses the following facts:

On March 21st, 1929, the date on which the summons and complaint were delivered to Mr. Harris, he was in the employ of the New York, Ontario and Western Railway Company as "milk collector," at Weehawken, New Jersey. His duties as milk collector were confined solely to milk shipped by way of the New York, Ontario and Western Railway Company from New York and Pennsylvania by the trains of that Company at Weehawken, New Jersey.

Shipment was made by milk trains operated by the New York, Ontario and Western Railway Company.

The milk shipped into Weehawken by the Ontario and Western trains is unloaded at milk platform. Milk waybills are delivered at Harris' place of work. They are in four parts. Harris and the assistant foreman separate the way-

bills, the foreman retains the tally sheet, and the remaining three parts are delivered to one of the office clerks who inspects the charges to see if they conform to the tariff. If they do not, he corrects them. Afterwards they are delivered to the cashier in the office. The cashier makes collections of the transportation charges from the consignees. A daily report of shipments, &c., is made by the clerk under the supervision of Harris, and is sent to the auditor, Mr. Startup, at the Grand Central Terminal, New York. There is also a daily report of collections and money sent to the treasurer of the company in New York city. Remittances are made under the name of Harris, and the clerk puts up the remittances under Harris' supervision.

Monthly reports are also made to Mr. Startup, and to division superintendent McQueen at Middletown, New York, and to division superintendent Wells at Norwich, New York.

Reports are also made to the two division superintendents with respect to any special matter connected with the shipments which happens after the milk is received on the milk platforms at Weehawken.

Harris performs no duties for the railway company except such as pertain to milk shipments.

The lines of the New York, Ontario and Western Railway Company run from Oswego to Cornwall, New York. From that point they have trackage rights over the West Shore railroad to Weehawken. The company also has a line from Cadosia, New York, to Scranton, Pennsylvania.

The milk shipments by the company's trains originate wholly in the States of New York and Pennsylvania.

The entire business of the company within the State of New Jersey is interstate. The company has no tariff rates on either freight or passengers in intrastate commerce within the State of New Jersey.

Colchester, the place where the accident happened, is in New York State and is one hundred and eighty-five miles from Jersey City. Train 801 mentioned in the complaint has a crew of five men—engineer, fireman, conductor, trainman and flagman.

Tickets sold at Weehawken are for points outside the State of New Jersey.

The duties of a freight agent are stated in detail in the testimony of Mr. Osgood.

Harris had nothing to do with the operation of trains of the railway company at any point on its lines. He did nothing in connection with maintenance of grade crossings, or highways on any of the lines of the railway company.

He did nothing with respect to investigation of accidents at any point on the company's lines. He made no reports with respect to accidents and had nothing to do with accidents arising out of the operations of the company.

Harris had four clerks working under him. The milk handlers or milk checkers are under a foreman and assistant foreman with whom Harris has nothing to do except in supervising matters which they cannot themselves adjust. When necessary, Harris gives directions to the milk platform foreman and milk checkers.

The foreman keeps the time of the milk checkers and hands his report to Harris to make out the payroll. The checks to pay the milk checkers are sent to Harris and he distributes them to the foreman.

Harris collects the freight revenue for the transportation of milk, but has nothing to do with collecting the price of the milk from the consignees. Bills for transportation are made up by the agent at the shipping station, and are complete when received in Weehawken, subject only to correction of errors with respect to tariffs. No separate bills for milk transportation are made.

The building where Harris works does not belong to the Ontario and Western. It is used jointly by that company and the New York Central Railroad Company.

The foreman and assistant foreman report to Harris anything out of the ordinary in connection with the milk business. The foreman makes a typewritten report to the division superintendents of the number of men and the number of cars he handles.

Harris would suspend an employe for cause, but dismissal would be subject to the superintendent's approval.

As stated before the question involved here is not whether in any case a foreign corporation doing business in this state may be sued by a non-resident plaintiff who has been injured in another state. If that were the only question it would be a simple one, because it is well settled that this can be done under certain conditions. *Metcufski* v. *Philadelphia and Reading Railroad*, 97 *N. J. L.* 100; *Fortein* v. *Delaware, Lackawanna and Western Railroad Co.*, 90 *Id.* 137; *Ackerson* v. *Erie Railway Co.*, 31 *Id.* 309.

In these cases, however, the questions involved in the present case, namely the validity of the service or the unlawful burden on interstate commerce were not raised. The only question was whether our courts would have jurisdiction of a cause of action for injuries inflicted in a foreign state. The fact that jurisdiction might be acquired if all the essential elements are present, does not affect the question of whether or not such jurisdiction would be acquired in the absence of one of the essential elements, namely, a valid service. If there is no valid service it necessarily follows that there would be no jurisdiction acquired.

It is well established in this state that in order to make service upon an agent sufficient to bring the defendant into court, such agent must:

1. Represent the company in some general capacity, or

2. He must have such connections with the business out of which the alleged cause of action arose as to make him a representative of the corporation with respect to that particular business. *Mulhearn* v. *Press Publishing Co.*, 53 *N. J. L.* 150; *Carroll* v. *New York, New Haven and Hartford Railroad Co.*, 65 *Id.* 124; *Erie Railroad Co.* v. *Van Allen*, 76 *Id.* 119.

It is the contention of the plaintiff that the amendment of 1908 and 1916 to the Corporation act of New Jersey overcomes the objections raised in these cases; this is not so. While these amendments add other classes of agents to those mentioned in the previous acts of 1865 and 1896 or at least attempts to name the specific kinds of agents who may be served they do not change the principles established by our

courts in the cases decided before these amendments were passed. Our courts having passed upon and established the principle that the "agent" spoken of in the previous acts must fall within one of the two classes, of either representing the company in some general capacity or of having some connection with the business out of which the cause of action arose, the legislature cannot change this principle by simply designating certain specific kinds of agents and making service upon them any more valid than a service upon the agent spoken of in former acts. The designation of a freight agent under the amendment of 1916 is no more specific than the term engineer under the former act, and cannot change the principle enunciated in *Carroll* v. *New York, New Haven and Hartford Railroad, supra,* where Mr. Justice Dixon held that to legalize service of process upon a foreign corporation the circumstances must show that the person on whom service is made has such connection either with the corporation or with the business out of which the alleged cause of action arose, that he would be considered the representative of the corporation for the purpose of service.

"In its designation of the classes of persons on whom process against foreign corporations may be served, our statute must be construed in the light of the constitutional principle that only by due process of law can courts acquire jurisdiction over parties; and therefore, when it refers to agents, clerks and engineers, persons whose relation to a corporation may give them no representative character whatever in regard to the litigation contemplated, the courts must confine those general terms in such a way as will uphold the jurisdiction which they are asked to exercise." *Carroll* v. *New York, New Haven and Hartford Railroad, supra.*

There is also a grave question in my mind whether Harris, the person served in this case, would even come within this class of agents named in the 1916 amendment. It is contended by the plaintiff that Harris was a freight agent, but the testimony taken upon the rule does not bear out this contention.

It is true that he was engaged to handle a product which would come under the general term of freight, but the term freight agent has a well-defined meaning and carries with it certain specified duties. The mere fact that an agent handles an article which, under the circumstances, would be considered as freight, would not necessarily bring him within the classification of a freight agent. Harris could not receive or ship any other article of freight except milk. He could not perform many of the other duties which a freight agent as the term is generally understood could perform. His was a limited power. He was only to take some part in the handling of one product, and this falls short of the much broader field in which a freight agent, as such, could be said to represent the company by which he was employed.

Having reached the conclusion that the service in this case was not such as to give the court jurisdiction over the person of the defendant and hence no jurisdiction of the cause of action, I do not find it necessary to pass upon other points raised by the defendant.

The service of the summons will be set aside.